# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# NORTHERN DIVISION
# COVINGTON

**CRIMINAL NO. 18-47-DLB**

**UNITED STATES OF AMERICA**                               **PLAINTIFF**

**V.**   **<u>UNITED STATES'S RESPONSE TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE</u>**

**MILTON L. SMITH**                                           **DEFENDANT**

\* \* \* \* \*

The United States opposes the Defendant's motion for compassionate release/reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) based on COVID-19 concerns. [R. 52: Motion.] The Defendant has failed to demonstrate that he has exhausted his administrative remedies and/or that he has any medical conditions that satisfy the requirements for compassionate release. And the Bureau of Prisons ("BOP") has implemented a COVID-19 action plan to minimize the risk of transmission into and throughout its facilities, and to treat the disease should it be contracted by an inmate.[1] Accordingly, COVID-19 is not an extraordinary and compelling reason to grant the Defendant compassionate release.

---

[1] *See* Updates to BOP Covid-19 Action Plan, available at https://www.bop.gov/resources/news/20200319_covid19_update.jsp (last updated Mar. 19, 2020).

## BACKGROUND

In 2019, this Court sentenced the Defendant to 192 months of imprisonment after he pled guilty to distributing – and possessing with intent to distribute – fentanyl. [R. 28: Judgment.] The Defendant is currently incarcerated at the Federal Correctional Institution (FCI) Hazelton in Bruceton Mills, West Virginia; is 50 years old; and is projected to be released on April 9, 2032. *See* BOP Inmate Locator at https://www.bop.gov/inmateloc/ (last accessed on November 30, 2020). On November 20, 2020, he filed the instant motion for compassionate release/reduction in sentence to time-served and/or home confinement because of COVID-19. The United States opposes the Defendant's requested relief.

## ARGUMENT

A court may reduce a term of imprisonment upon finding "extraordinary and compelling circumstances," consistent with applicable policy statements of the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).[2] Under the statute, as amended by Section 603(b) of the First Step Act, the Court may act "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the

---

[2] In *United States v. Jones*, No. 20-3701, 2020 WL 6817488 at *7-9 (6th Cir. Nov. 20, 2020), the Sixth Circuit held that "§ 1B1.13 is not an 'applicable' policy statement in cases where incarcerated persons file their own motions in district court for compassionate release."

Bureau of Prisons to bring a motion on defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."

Examples of qualifying "extraordinary and compelling reasons" include (1) terminal illness; (2) a serious medical condition that substantially diminishes the ability of the defendant to provide self-care in prison; or (3) the death of the caregiver of the defendant's minor children. *See* U.S. Sentencing Guidelines Manual §1B1.13 cmt. n.1. Even when an extraordinary and compelling reason exists, however, a court should only grant a motion for release if it determines that the defendant is not a danger to the public. *Id*. And the Court must consider, in general, whether the 18 U.S.C. § 3553(a) factors weigh in favor of release. *See* 18 U.S.C. § 3582(c)(1)(A); U.S. Sentencing Guidelines Manual §1B1.13.

Previously, only the BOP could file a motion for compassionate release. The First Step Act amended the provision to allow defendants to file such a motion as well. *See* First Step Act of 2018, 115 P.L. 391, § 603(b)(1). Before a defendant may file a motion, however, he must have either (a) "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf," or (b) 30 days must have lapsed since the receipt of such a request by the warden of the prison. 18 U.S.C. § 3582(c)(1)(A). The failure to exhaust administrative remedies within the BOP is fatal to a defendant's motion

for compassionate release. *United States v. Alam,* 960 F.3d 831, 832 (6th Cir. 2020) ("[…] because this exhaustion requirement serves valuable purposes (there is no other way to ensure an orderly processing of applications for early release) and because it is mandatory (there is no exception for some compassionate-release requests over others), we must enforce it."); *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020) ("Given BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance."); *United States v. Estrada Elias*, No. 6: 06-096-DCR, 2019 WL 2193856, at *2 (E.D. Ky. May 21, 2019); *accord United States v. Elgin*, Case No. 2:14-cr-129-JVB-JEM, 2019 U.S. Dist. LEXIS 86571, *2–3 (N.D. Ind. May 23, 2019); *cf. United States v. Leverette*, 721 F. App'x 916, 917 (11th Cir. 2018) (exhaustion of BOP remedies is requisite for judicial review under 28 U.S.C. § 2241); *United States v. Roberson*, 746 F. App'x 883, 885 (11th Cir. 2018) (same); *United States v. Alexander*, 609 F.3d 1250, 1260 (11th Cir. 2010) (same). An inmate may appeal the warden's compassionate-release denial through BOP's administrative remedies program. 28 C.F.R § 571.63(a).

The Defendant bears the burden of showing that he exhausted his administrative rights with the BOP before filing his compassionate-release motion. *United States v. Van Sickle*, No. CR18-0250JLR, 2020 WL 2219496 *3 (W.D.

Wash. May 7, 2020). Other than his self-serving statement that he "sent a letter to the Warden of Hazelton FCI more than '30 days ago,' fulfilling the requirements of the First Step Act," [R. 32: Motion at 231[3]], there is no evidence that the Defendant has exhausted his administrative remedies.[4]

Even if there was, this Court should, nevertheless, deny the Defendant's motion on the merits because potential COVID-19 exposure, alone, is not an extraordinary and compelling reason to grant release under any circumstances. *Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]"); *United States v. Gileno*, No. 3:19-cr-161-(VAB)-1, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020) (denying compassionate release because BOP's proposed plan adequately addresses the COVID-19 pandemic). A defendant seeking compassionate release bears the burden of establishing that release is warranted. *United States v. Heromin*, 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019); *cf. United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (holding that a movant for a reduction under section 3582(c)(2) bears the burden to establish a reduction is warranted). Courts have generally recognized that "it is a rare case in which

---

[3] All references are to Page ID#.

[4] Previously, the United States has requested, and received, documentation from the BOP Office of General Counsel (BOP-OGC) to determine whether Defendants have exhausted their administrative remedies; as of the date of this filing, there are several outstanding requests to which there have been no responses.

health conditions present an 'exceptional reason'" to allow for release where detention otherwise would be warranted. *United States v. Wages*, 271 F. App'x 726, 728 (10th Cir. 2008) (considering pretrial detention).

In this case, the Defendant simply has not made a factual record that his needs will not be met while detained. He alleges only that he is at heightened risk for becoming seriously ill if he contracts COVID-19 because he "is a black male in his fifties. He has a family history of serious heart issues and is already showing signs of hypertension." [R.32: Motion at 232.] Conspicuously missing from the Defendant's motion is any evidence (such as medical records) to support his claims.

The Centers for Disease Control and Prevention (CDC) has identified two categories of medical risk factors affecting the likelihood of severe outcomes from COVID-19. First, the CDC has promulgated a list of conditions that, according to current data, definitively entail a greater risk of severe illness. An inmate who presents one of the risk factors on that list, *as confirmed by medical records, and who is not expected to recover from that condition*, presents an extraordinary and compelling reason allowing compassionate release under the statute and guideline policy statement, even if that condition in ordinary times would not allow compassionate release. Such conditions include: cancer, chronic kidney disease, COPD (chronic obstructive pulmonary disease), heart conditions (such as heart

failure, coronary artery disease, or cardiomyopathies), immunocompromised state (weakened immune system) from solid organ transplant, obesity (severe and otherwise), pregnancy, Sickle cell disease, smoking, and Type 2 diabetes mellitus. The Defendant suffers from none of the foregoing.

In addition to listing certain conditions that place people at increased risk of severe illness from COVID-19, the CDC has created a second list of conditions that "might" increase the risk of severe illness. On its face, the Defendant's motion alleges only he may have one such condition: hypertension. But in the absence of any – much less adequate – documentation, and in light of the inherent speculation related to this second group of conditions – the Defendant has not satisfied his burden of proof.

The United States is cognizant of inmate concerns stemming from COVID-19, as well as this defendant's desire to return home safely. The United States, including the BOP, does not minimize the concern or risk; rather, this unique situation is being diligently monitored. The BOP has taken aggressive action to mitigate the effects of COVID-19, and has been taking proactive steps to prevent potential coronavirus transmissions for months. *See Updates to BOP Covid-19 Action Plan*, located at https://www.bop.gov/resources/news/20200319_covid19_update.jsp. On March 13, 2020, after consulting with the Centers for Disease Control and reviewing

guidance from the World Health Organization, the BOP released its multistep action plan to minimize the risk of COVID-19 in its facilities. The BOP continues to update its plan as it gathers additional information and resources to better manage and protect its inmate population.

The BOP has also implemented several preventive measures, including, but not limited to, the following:

1. **Inmate and Staff Screenings**:
   Effective April 1, 2020 all inmates in every institution will be secured in their assigned space for 14 days. All incoming inmates are quarantined for 14 days, and screened for COVID-19 symptoms and risk of exposure. Asymptomatic inmates with a documented risk of exposure will be quarantined; symptomatic inmates with documented risk of exposure will be isolated and tested pursuant to local health authority protocols. In areas with sustained community transmission, all facility staff will be screened for self-reported risk factors and elevated temperatures. (Staff registering a temperature of 100.4 degrees Fahrenheit or higher will be barred from the facility on that basis alone.) Contractor access to BOP facilities is restricted to only those performing essential services (e.g. medical or mental health care, religious, etc.) or those who perform necessary maintenance on essential systems. All volunteer visits are suspended absent authorization by the Deputy Director of BOP. Any contractor or volunteer who requires access will be screened using the same procedures as applied to staff prior to entry.

2. **Quarantine Logistics**:
   All BOP institutions have assessed their stockpiles of food, medicines, and sanitation supplies, and established quarantine areas within their facilities to house any detainees who are found to be infected with or at heightened risk of being infected with coronavirus pursuant to the above-described screening protocol.

3. **Suspension of Social Visits and Tours:**

   The BOP has placed a 30-day hold on all social visits. To ensure that familial relationships are maintained throughout this disruption, all detainees' telephone allowances have been increased to 500 minutes per month. Tours of facilities are also suspended for at least the first 30 days that the BOP's Action Plan is in effect.

4. **Suspension of Legal Visits**:
   The BOP has also placed a 30-day hold on legal visits, though such visits will be permitted on a case-by-case basis after the attorney has been screened for infection in accordance with the screening protocols for prison staff.

5. **Suspension of Inmate Movements**:
   BOP has also suspended the movement of inmates and detainees among its facilities for at least the first 30 days that the Action Plan is in effect. Though there will be exceptions for medical treatment and similar exigencies, this will prevent transmissions between institutional populations. **The BOP has emphasized that all inmates, regardless of where they are being housed, are screened for COVID-19 prior to movement. Both the BOP and USMS are using screening protocols for both inmates and staff.** Likewise, all official staff travel has been cancelled, as has most staff training.

6. **Modified Operations**:
   Wardens at BOP facilities have modified operations, such as staggering of meal times and recreation time, to maximize social distancing

*See* BOP COVID-19 Resource Page at https://www.bop.gov/coronavirus/index.jsp

(regularly updated).

While there have been confirmed reports of COVID-19 at FCI Hazelton,[5] the facility employs a team of medical professionals and provides round-the-clock medical care. The facility is also equipped to provide medical isolation when

---

[5] As of the date of this filing, the BOP reports 3 inmates/3 staff cases of COVID-19 at FCI Hazelton.

required. By virtue of being in the BOP's custody, the Defendant is in the presence of medical professionals at all times. In the unlikely event that the Defendant becomes infected with COVID-19, he will be quarantined, monitored, and receive necessary medical treatment, wholly consistent with the CDC's guidelines.

A few other facts bear mentioning. First, the Defendant has served a little over one year of his 16-year sentence. And he received that sentence because he was determined to be a "career offender." In fact, the Defendant's Presentence Investigation Report (PSR) revealed four prior drug trafficking convictions (all of which were assessed criminal history points and contributed, in part, to a Criminal History Category of VI). The Defendant, therefore, is a repeat drug offender whose early release would pose a danger to the community. *See United States v. Goode*, 2020 WL 6445930, at *6 (E.D. Pa. Nov. 2, 2020) (notwithstanding health conditions, release is not warranted with 55 months remaining on 210-month sentence for career offender who committed drug trafficking offenses); *United States v. Stuyvesant*, 2020 WL 1865771, at *7 (S.D. Fla. Apr. 14, 2020) (relief denied even assuming that the defendant suffers from end-stage renal disease; he is a repeat drug offender who committed offenses while suffering from the same condition); *United States v. Ikehara*, 2020 WL 3065104 (D. Haw. June 9, 2020) (defendant has 39 months remaining on 100-month drug sentence, and has lengthy

criminal record for myriad offenses; relief is, therefore, denied notwithstanding coronary artery disease, heart disease, hypertension, hyperlipidemia, and Type II diabetes); *United States v. McCauley*, 2020 WL 3513701, at *7 (N.D. Iowa June 29, 2020) (although the defendant is at risk due to health conditions, including COPD, he is a danger to the community; "[h]is criminal history spans his entire adult life and includes crimes of violence, multiple prior drug offenses, and at least six violations while on probation….Defendant was not deterred by prior punishments or the multiple interactions he had with law enforcement officers throughout his offense conduct here" involving extensive drug trafficking); *United States v. Mathews*, 2020 WL 3498100, at *2 (E.D. Mich. June 29, 2020) ("Drug-related offenses are serious and Defendant has only served 40% of his 151-month sentence.").

Finally, to the extent the Defendant asks the Court to reduce his sentence to time-served or modify it to include home confinement that request should, likewise, be denied. As noted above, Section 3582(c)(1)(A) "empowers the Court to 'reduce the term of imprisonment,' upon a finding of 'extraordinary and compelling reasons.'" *United States v. Braxton*, Nos. JKB-09-478, JKB-15-408, 2020 WL 47448536 at *5 (D. Mar. Aug. 17, 2020). As explained herein, no such circumstances exist in this case. More importantly, this Court has no authority to

direct the BOP to place a defendant in a particular facility/status. Rather, such designation decisions are committed solely to BOP's discretion.

Once a sentence is imposed, BOP is solely responsible for determining an inmate's place of incarceration. *See* 18 U.S.C. § 3621(b); *Moore v. United States Att'y Gen.*, 473 F.2d 1375, 1376 (5th Cir. 1973); *see also McKune v. Lile*, 536 U.S. 24, 39 (2002) (plurality opinion) (noting "It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."). A court has no authority to designate a prisoner's place of incarceration. *United States v. Voda*, 994 F.2d 149, 151-52 (5th Cir. 1993). Because a request for home confinement alters only the place of incarceration, not the actual term of incarceration, only BOP may grant or deny it.

Moreover, there is no constitutional or statutory authority that allows the Court to order home confinement. A prisoner has no constitutional right to confinement in any particular place, including in home confinement. *See Sandin v. Conner*, 515 U.S. 472, 478 (1995) ("the Due Process Clause did not itself create a liberty interest in prisoners to be free from intrastate prison transfers."); *Meachum v. Fano*, 427 U.S. 215, 224 (1976) ("The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in any of its prisons."). Following the imposition of sentence, the Court has limited jurisdiction to correct or modify that sentence absent specific

circumstances enumerated by Congress in 18 U.S.C. § 3582. *United States v. Garcia*, 606 F.3d 209, 212 n.5 (5th Cir. 2010). Section 3582(c) contemplates only a reduction in sentence. But a defendant's request to serve the rest of his term in home confinement, as opposed to prison, does not result in a reduction in his sentence; rather it merely permits the inmate to serve out his term of imprisonment at home. Accordingly, such a request falls outside § 3582(c)'s limited grant of authority to this Court to modify a sentence post-conviction. Because § 3582(c) deprives the Court of jurisdiction to grant home confinement and because no other statutory authority exists to support a request for such relief, this Court has no authority to act on it.

In sum, this Court should deny the Defendant's motion for compassionate release/reduction in sentence because (1) he has failed to exhaust his administrative remedies; (2) the BOP has procedures in place to adequately address COVID-19; therefore, COVID-19 is not an extraordinary and compelling reason to grant the Defendant compassionate release; and (3) the Defendant remains a danger to the community.

        Respectfully submitted,

        ROBERT M. DUNCAN, JR.
        UNITED STATES ATTORNEY

By:   /s/ Elaine K. Leonhard
      Assistant United States Attorney
      207 Grandview Drive, Suite 400

Ft. Mitchell, Kentucky 41017
(859) 652-7035
Elaine.K.Leonhard@usdoj.gov

## CERTIFICATE OF SERVICE

On December 8, 2020, I electronically filed the foregoing using the CM/ECF system, which will automatically send a notice of electronic filing to all counsel of record, and I mailed a copy to:

Milton L. Smith
Reg. No. 22301-032
FCI Hazelton
Federal Correctional Institution
P.O. Box 5000
Bruceton Mills, WV  26525

/s/ Elaine K. Leonhard
Assistant United States Attorney